UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

RONALD G. WOLFF, JR.,

and

KARRI E. WOLFF,

       Plaintiffs,

vs.

JOSH KAUL, Wisconsin Attorney General
Wisconsin Department of Justice,

and

DENNIS CARROLL, Special Agent
Division of Criminal Investigation
Wisconsin Department of Justice,

and

Unknown Persons 1-25 who are Agents and Employees
of the Division of Criminal Investigation
or the Wisconsin Department of Justice,

and

Unknown Persons 26-50 who are Deputies or Employees
of the Outagamie County Sheriff's Department,

       Defendants.

Case No.

---

COMPLAINT

---

1

Now come Plaintiffs, above captioned, by and through their attorneys Eminent Domain Services, LLC, by Attorneys Erik Olsen and Andrew Weininger, and for their Complaint state and allege as follows:

**Parties**

1) Plaintiff Ronald G. Wolff is an adult resident of the State of Wisconsin, and is an elected official of the Town of Grand Chute, having first been elected Town Supervisor #1 in the April 2021 election.

2) Plaintiff Karri E. Wolff is an adult resident of the State of Wisconsin.

3) Defendant Josh Kaul is the Wisconsin Attorney General and therefore is the head of the Wisconsin Department of Justice. At all times relevant hereto he acted under color of state law. He is sued in his official capacity due to the fact that as the final decision maker and final policy maker at the Department of Justice, he was ultimately responsible for the care and return of the property seized from the Wolffs by the DCI. His professional address is at West Main Street in Madison, Wisconsin.

4) Defendant Dennis Carroll is a special agent employed, or previously employed, by the Wisconsin Department of Justice, Division of Criminal Investigation. He is sued in both his individual and official capacities. At all times relevant hereto he acted under color of state law.

5) Defendants "Unknown Persons 1-25" are Agents and Employees of the Wisconsin Department of Justice who were, at all times relevant herein, employees or agents of the Division of Criminal Investigation or the Wisconsin Department of Justice who either committed or assisted in the commission of one or more of the constitutional violations set forth in this Complaint. Any and all identifiable individuals, through discovery or

otherwise, are sued in their individual and official capacities. At all times relevant hereto they acted under color of state law.

6) Defendants "Unknown Persons 26-50" were, at all times relevant herein, employees or agents of the Outagamie County Sheriff's Department who either committed or assisted in the commission of one or more of the constitutional violations set forth in this Complaint. Any and all identifiable individuals, through discovery or otherwise, are sued in their individual and official capacities. At all times relevant hereto they acted under color of state law.

**Background**

7) This case involves a dispute over special assessments in the Town of Grand Chute that escalated out of control.

8) For many years prior to 2021, the Town of Grand Chute had a policy of levying very high special assessments against abutting property owners for street and sewer projects that supposedly benefitted the abutting properties. In some cases the special assessments were in excess of 100% of the assessed value of the homes and businesses against which they were assessed.

9) The residents of Grand Chute became increasingly dissatisfied with this policy and in 2019 and 2020, a number of residents grouped together and sued the Town of Grand Chute in three separate lawsuits to contest special assessments related to projects on Spencer Street (Outagamie County Case Number 19-CV-779), McCarthy Street (Outagamie County Case Number 19-CV-872), and Elsner Road (Outagamie County Case Number 19-CV-411). All of the special assessments challenged in the lawsuits were in the Town of Grand Chute. Eminent Domain Services, LLC represented the landowners in all three of these special assessment challenges.

10) Candidates who were committed to changing Grand Chute's policy on special assessments ran for Town Board in the April 2021 election and several of the anti special assessment candidates were elected, one of which was Plaintiff Ron Wolff.

11) After the April 2021 election, the Town Board was sharply divided between the newly elected Town Board members who opposed Grand Chute's special assessment policy, and, in particular one of the previous Town Board members named Brad Gehring, the former Sheriff of Outagamie County, who supported keeping Grand Chute's special assessment policy as it was. Brad Gehring is politically allied with some former Town of Grand Chute board members, and some current Town of Grand Chute employees. Ron Wolff had publicly accused some of the previous Town Board members and some of the Grand Chute employees of having erred in relation to the special assessments.

12) In August of 2021, circuit court Judge Vincent Biskupic ruled on summary judgment in one of the cases challenging the special assessments that the assessments related to McCarthy Street were in large part unlawful.

13) The electoral success of Ron Wolff and the anti-special assessment faction angered Brad Gehring so Gehring came up with an idea of how to overturn Ron Wolff's election by concocting a theory that Ron Wolff did not actually live in the Town of Grand Chute.

14) The Town Clerk, Angie Cain later explained that the state elections committee legal counsel had informed Cain that Wolff could potentially reside on the property located at North Richmond Street even if the residential structure was not present upon the property. Cain further explained the state elections commission attorney instructed Cain that it depended on the intent of an elector as to where they reside and where they register to vote. Cain explained Supervisor Wolff advised her in writing (by affidavit) that it was his intent to reside at his North Richmond Street residence. Furthermore, there was actually a

home on the Wolffs property at Richmond Street, the conversation about a vacant property was a hypothetical example presumably meant to impress upon the people at Grand Chute that it is a voter's intention that controls.

15) Oblivious to the legal advice from the Wisconsin Elections Commission, in September of 2021, Brad Gehring initiated a legal proceeding against Ron Wolff under Wis. Stat. § 6.48 before the Town Clerk, alleging that Ron Wolff was not a resident of the Town and that Ron Wolff's residence was not at 4801 N. Richmond Street, Grand Chute, WI 54913.

16) On September 2nd, 2021, the Town Clerk conducted the proceeding envisioned under Wis. Stat. § 6.48, Brad Gehring and Ron Wolff both testified and presented documents to the Town Clerk, however the Town Clerk decided in favor of Ron Wolff, and Brad Gehring's challenge to Ron Wolff's voter registration was not sustained and, therefore, Ron Wolff's registration remained valid.

17) Shortly after September 2nd of 2021, Brad Gehring stated that he was "going to" the Outagamie County District Attorney in relation to his allegations relating to Ron Wolff's residency. Brad Gehring then undertook a campaign of meetings and phone calls in an attempt to get Ron Wolff investigated and or charged with a crime in order to attempt to cause Ron Wolff to be investigated and possibly charged with a crime in order to prevent Ron Wolff from exercising his political rights in his duly elected role as Town Supervisor. Eventually after an extensive campaign of phone calls and meetings with law enforcement, Brad Gehring was successful in convincing DCI and Special Agent Jay Yerges to investigate Ron Wolff. During these meetings and phone calls, Brad Gehring specifically told DCI that Karri Wolff was suffering from cancer.

18) On March 22 of 2022, DCI Special Agent Jay Yerges, DCI Special Agent Dennis Carroll, and the other Defendants above captioned from DCI and Outagamie County

Sheriff's Deputies executed the Warrant dated March 21st, 2022 for property at 4801 North Richmond Street, Township of Grand Chute (Appleton), Outagamie County, Wisconsin, N9133 Krull Road, Nichols, Outagamie County, Wisconsin; and Lakeshore Cleaners, Inc., 4623 North Richmond Street, Township of Grand Chute (Appleton), Outagamie County, Wisconsin. This execution of the search warrant appeared to be highly politically motivated because it occurred less than two weeks before the Grand Chute Town Board election and it was immediately leaked to the press.

**The Department of Justice Used Excessive Force Against Karri Wolff**

19) On March 22nd of 2022, Karri Wolff was in the front room of the offices of Lake Shore Cleaners at 4623 North Richmond Street when Defendant Special Agent Dennis Carroll and another agent from DCI walked in through the front door to execute a search warrant against Ron and Karri Wolff.

20) Karri Wolff walked to the shop to get Ron Wolff, but encountered him already being walked into the middle room of the shop by another Defendant who appeared to be from DCI.

21) The two Defendants, one of whom was Special Agent Dennis Carroll from DCI, ordered Ron and Karri Wolff to sit down.

22) Karri Wolff stepped towards her desk which was a few feet away, and as she stepped towards her desk Special Agent Dennis Carroll intentionally grabbed her by the hood of her hooded sweatshirt and yanked it with what to her felt like extreme force as shown in the image below recovered from the security cameras.



23) Defendant Special Agent Dennis Carroll, who yanked Karri Wolff's hood as shown in the above photograph, was around 6'2" tall and broadly built and was employed by the Department of Justice.

24) When Defendant Special Agent Dennis Carroll yanked Karri Wolff's hood of her hooded sweatshirt, she immediately felt an extreme amount of pain in her neck.

25) Karri Wolff had surgery on her neck in 2020 because she had cancer and the doctors implanted a chemotherapy port in her neck for them to put the chemotherapy drugs in.

26) One tube of the port in Karri Wolff's neck ran up the vein in her neck, and the other tube ran down towards her heart. The port was eventually removed, however during the cancer treatment Karri Wolff had a lot of difficulties with the port and if she slept on her right hand side or talked on the phone on her right hand side it would be uncomfortable and would feel like she could not breathe.

27) On March 22nd of 2022, the DCI was on notice that Karri Wolff was in treatment for cancer and knew or should have known that Karri Wolff should not be physically assaulted.

28) After the assault, Karri Wolff immediately told the officer that he had hurt her by yanking the hood of her hooded sweatshirt, and the Defendant said to Karri Wolff "I hardly touched you, I told you to sit."

29) The Defendant Special Agent Dennis Carroll injured Karri Wolff's neck by jerking the hood of her hooded sweatshirt.

30) The pain that Defendant Special Agent Dennis Carroll caused by yanking Karri Wolff's hood of her hooded sweatshirt felt to her like getting punched in the neck.

31) The pain and impact caused by Defendant Special Agent Dennis Carroll yanking the hood of Karri Wolff's sweatshirt caused her to be temporarily unable to breathe.

32) Karri Wolff then sat down and the Defendants, one of whom was Defendant Special Agent Dennis Carroll, informed Karri Wolff and Ron Wolff that they were being detained.

33) The next morning Karri Wolff noticed that she had lost her voice when she turned her head to the right. The right side is the side of her throat where her port was for chemotherapy prior to it being removed.

34) Karri Wolff was eventually able to speak with a nurse at Fox Valley Surgical which is the hospital that did the surgery to install her chemotherapy port. The nurse explained that a quick blunt trauma could have caused some internal swelling in the throat area that

would cause the symptoms but not to come in for a visit unless she had problems breathing. Karri Wolff's throat has subsequently mostly recovered.

35) The use of force by Defendant Special Agent Dennis Carroll described in this section is excessive because no force was required at all under the circumstances, and pulling the hood of someone's sweatshirt backwards is always an inappropriate use of force. The inappropriate use of force is evidence that the Wisconsin Department of Justice was deliberately indifferent in training Defendant Special Agent Dennis Carroll who yanked Karri Wolff's hood on the appropriate use of force, and deliberately indifferent to supervising Defendant Special Agent Dennis Carroll's use of force. Alternately, Kaul is the final policymaker for the Wisconsin Department of Justice and for DCI, and did allow a policy or custom of allowing inappropriate uses of force to be the norm at DCI.

### The Temporary and Permanent Taking of the Wolffs' Property

36) On March 22nd of 2022, Special Agents Jay Yerges, Dennis Carroll, and somewhere between approximately 15 and 50 other persons, most of whom appeared to be agents from DCI but some of whom were wearing Outagamie County Sheriff's Uniforms, executed the Warrant on the three properties specified therein.

37) Defendants who appeared to be DCI staff took Ron Wolff's and Karri Wolff's cell phones and also searched everything at 4623 North Richmond Street including even going through the garbage in the bathroom.

38) There is a second business at 4623 North Richmond Street called Lakeshore Legendary Lawn care, the Defendants who appeared to be DCI staff searched Lakeshore Legendary Lawncare's papers despite being informed repeatedly that it was not part of Lakeshore Cleaners, Inc.

39) Plaintiffs observed the Defendants who appeared to be DCI staff, but possibly some in the Outagamie County Sheriff Department's uniform, taking many pictures of documents at the office, while it was not possible to observe all of the pictures being taken, it was observed that these Defendants seemed very interested in taking pictures of documents relating to a line of credit and also taking pictures of Plaintiffs' truck titles.

40) When the Defendants who appeared to be DCI staff were searching Karri Wolff's desk, Karri Wolff was standing by the nearby wall. One of the apparent DCI Defendants said to Karri Wolff that they needed the code to go into the garage at N9133 Krull Road, Nichols. The Defendant commanded Karri Wolff to type the code to open the garage into his cell phone, when Karri Wolff was having trouble remembering the code, the Defendant stated "you either tell us the code or we will break the door in" she was eventually able to type the correct code. Almost immediately after that the Defendant asked Karri Wolff to type the code for a safe located at N9133 Krull Road, Nichols into the Defendant's phone. Again, the Defendant told Karri Wolff that they would break the safe open if she did not give them the code. The Defendants did open and search the safe, which is known because the contents had been moved around, although the Warrant did not authorize the search of any locked safes.

41) Karri Wolff's neighbors at Krull Road informed her that they observed the Defendants entering her home with guns drawn.

42) The Defendants who appeared to be DCI staff also asked for the codes for Ronald Wolff's and Karri Wolff's laptops, and she informed them that it was written on a sticky note on the computer. Karri Wolff asked one of the Defendants who appeared to be DCI staff who was wearing a jacket that said "Forensics" on it, whether anything was taken from Krull Road, and he said not that he was aware of and that "it didn't sound like it" and that Defendant informed Karri Wolff that if they took anything there would be a list

10

of everything that was taken from the premises left behind at the premises. The Defendants did not leave a list, but things are missing from the premises.

43) The Defendants seized many things from the Wolffs' properties. They items and documents seized included three (3) laptops, Karri Wolff's calendar, a list of codes for credit cards, online medical accounts, and bank accounts which were in a folder, some of Karri Wolff's medical records that were clipped to the calendar, personal and business tax returns, all of the folders of documents related to a business called Junior's Farms, all of the folders related to a property called Willow Lane, the folders related to investments in a property called R.A.K. II, three checkbooks, an Amazon credit card, Ron Wolff's social security folder, paperwork related to a sale in process for Willow Lane Assisted living, a folder with dentists appointment sheets, legal papers related to Ronald Wolff's daughter's divorce papers, certified survey maps for the in progress Lakeshore Cleaners land sale and other related documents, the Menards card, a bid for a metal roof on the Krull Road property, many business and tax records, some of Ronald Wolff's political election papers, Karri Wolff's notary papers and a Christmas card list.

44) The Defendants went through Karri Wolff's underwear drawer, her jewelry drawer, and left many papers that had been rifled through out of place.

45) The Defendants did not go through anything in the shop or loft area of Krull Road, even though the loft area contained many plastic totes of items including documents.

46) The Defendants searched Ron Wolff's truck but it is not known if they searched any other vehicles. The Defendants searched 4801 Richmond Street, and appear to have photographed all of Ron Wolff's belongings, the Defendants broke down the door of a Quonset hut located at 4801 Richmond Street and presumably searched inside.

47) Much of the Wolffs' property was held for an unreasonable amount of time, some of their property still has not been returned, and at least one of the laptops was returned in a broken condition.

48) At around 2pm on March 22nd, 2022 the Defendants gave Karri Wolff her cell phone back, but it no longer worked correctly and some pictures that she took appear to have been deleted. When the Defendants gave her phone back the cloud was not working and it took her approximately 4 hours of work to recover her cloud.

49) The retention of the Wolffs' property for a longer time than was reasonably required for investigative purposes constitutes a temporary or permanent taking in violation of the 5th Amendment and the 14th Amendment to the United States Constitution, and the Wisconsin Department of Justice, of which Defendant Josh Kaul is the final decision maker and final policy maker, is solely responsible for the care and return of the property seized from the Wolffs.

## Damages

50) The temporary and permanent loss of the items that were seized by the Defendants has caused a major inconvenience for Ron Wolff and Karri Wolff.

51) Some of the Wolffs' electronic data was destroyed and two of the laptops were broken when they were returned, and Ron's tower computer has not been returned. One of the Wolffs' laptops has not been returned.

52) The Defendants' retention of the Wolffs' records constitutes a violation of their privacy and Karri Wolff is missing some of her records including medical records.

53) Karri Wolff is suffering from severe emotional distress and no longer feels safe, Ron Wolff is unable to sleep and is suffering from emotional distress as a direct result of the events complained of herein.

54) Despite the fact that one of the Defendants informed Ron Wolff that the events complained of herein would not be in the news, the news has covered it leading to the conclusion that someone leaked the information for political purposes.

**Jurisdiction & Jury Demand**

55) This Court has jurisdiction over this action pursuant to Title 28 U.S.C. §§ 1331 and 1343(3) in that the controversy arises under the United States Constitution and under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202. Venue is proper in this Court because the lead Defendant resides in this district, and his professional address is in Madison, Wisconsin. 28 U.S. Code § 1391(a)(1) ("a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). This Court has authority to award attorneys fees and litigation expenses pursuant to 42 U.S.C. § 1988. Plaintiffs further invoke the supplemental jurisdiction of this Court under 28 U.S.C. § 1367(a) to hear and adjudicate state law claims to the extent that any are intertwined with the questions presented in this case. Each and all of the acts alleged herein were done by Defendants, or their officers, agents, and employees, under color and pretense of the statutes, ordinances, regulations, customs and usages of state law. The Plaintiffs request a jury.

## COUNT I

42 U.S.C. § 1983 (Fifth and Fourteenth Amendment – Due Process Violation)

Against: All Defendants.

56) All previous paragraphs are incorporated herein by reference as though fully set forth.

57) Plaintiffs make a claim under 42 USC § 1983 for violation of the Fifth and Fourteenth Amendments of the United States Constitution.

58) As pled above, a significant and important portion of the Plaintiffs' personal property was seized, causing them damage. The seizure of certain items was per-se unreasonable. The time delay in the return of other items was unreasonable. The fact that some items have still not been returned was unreasonable.

59) Wherefore, as a direct and proximate result of the actions of Defendants as pled herein, Plaintiffs have suffered a violation of their constitutional rights due to the temporary or permanent confiscation of their property without due process of law, the temporary or permanent loss of their property, and otherwise as set forth herein.

## COUNT II

Common Law Claim for Return of Property

*Mr. Lucky Messenger Service, Inc. v. United States*, 587 F.2d 15 (7th Cir. 1978)

Against: All Defendants.

60) All previous paragraphs are incorporated herein by reference as though fully set forth.

61) Plaintiffs make a claim for equitable relief to a party seeking the return of its seized property and for damages.

62) As pled above, a significant and important portion of the Plaintiffs' personal property was seized, causing them damage. The seizure of certain items was per-se unreasonable. The time delay in the return of other items was unreasonable. The fact that some items have still not been returned was unreasonable and these items should be returned.

63) Wherefore, as a direct and proximate result of the actions of Defendants as pled herein, Plaintiffs have suffered a violation of their constitutional rights due to the temporary or permanent confiscation of their property without due process of law, the temporary or permanent loss of their property, and otherwise as set forth herein.

## COUNT III
### 42 U.S.C. § 1983 (Fourth Amendment – Excessive Force)

Against: Special Agent Dennis Carroll

64) All previous paragraphs are incorporated herein by reference as though fully set forth.

65) Plaintiff Karri Wolff makes a claim under 42 USC § 1983 for violation of the Fourth Amendment of the U.S. Constitution.

66) The Fourth Amendment does not permit Defendants to use excessive force because the right to be free from excessive force is clearly established under the Fourth Amendment.

67) Excessive force claims are analyzed under an objective reasonableness standard.

68) The circumstances relevant to the reasonableness of the officer's conduct include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

69) The individual Defendant's use of force against Plaintiff Karri Wolff was not reasonable under the circumstances, because there was objectively no reason to use any force at all, and pulling the hood of a hooded sweatshirt cannot possibly be an acceptable tactic for an officer to employ, and Karri Wolff was not under arrest or resisting arrest or attempting to evade arrest by flight, and Karri Wolff did not pose any threat to the officers.

70) The individual Defendant's use of force against Plaintiff Karri Wolff was particularly egregious because the Defendants were on notice that Karri Wolff was suffering from cancer and undergoing cancer treatment, and pulling the hood of a hooded sweatshirt of a woman who is suffering from cancer cannot possibly be an acceptable tactic for an officer to employ under the circumstances of this case.

71) Wherefore, as a direct and proximate result of the actions of individual Defendant's use of force against Plaintiff Karri Wolff, Plaintiff Karri Wolff has suffered damages in the form of pain and suffering.

## COUNT IV
## 42 U.S.C. § 1983
### (Fifth Amendment – taking Without Just Compensation)

Against: All Defendants.

72) All previous paragraphs are incorporated herein by reference as though fully set forth.

73) Plaintiffs make a claim for just compensation for the temporary and permanent taking of their property under the Fifth Amendment to the United States Constitution.

74) As pled above, a significant and important portion of the Plaintiffs' personal property was seized, causing them damage. The seizure of certain items was per-se unreasonable. The time delay in the return of other items was unreasonable. The fact that some items have still not been returned was unreasonable and these items should be returned.

75) Wherefore, as a direct and proximate result of the actions of Defendants as pled herein, Plaintiffs have suffered a violation of their constitutional rights due to the temporary or permanent confiscation of their property without due process of law, the temporary or permanent loss of their property, and otherwise as set forth herein.

WHEREFORE, Plaintiffs request that this Court grant the following relief:

(a) Enter judgment ordering the return of all of the Wolffs' seized documents, data, and items to Ron Wolff and Karri Wolff forthwith and that no copies, photographs, videos, or other record of any of it shall be retained by the Defendants;

(b) Enter judgment awarding each of the Plaintiffs just compensation, nominal, compensatory, and punitive damages for each count as applicable;

(c) Award Plaintiffs their costs, interest and reasonable attorneys' fees for this action pursuant to 42 U.S.C. § 1988 and other relevant statutes; and

(d) Order such other and further injunctive relief as the Court deems just and proper under the circumstances.

Dated this 20 th day of March, 2024.

*/s/ Erik S. Olsen*
Erik S. Olsen
SBN 1056276
erik@eminentdomainservices.com

Eminent Domain Services, LLC
6515 Grand Teton Plaza, Ste 241
Madison, WI 53719
(608) 535-6109