IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RONALD G. WOLFF and
KARRI E. WOLFF,

          Plaintiffs,

  v.

JOSH KAUL and DENNIS CARROLL,

and

Unknown Persons 1–25 who are Agents and Employees of the Division of Criminal Investigation or the Wisconsin Department of Justice,

and

Unknown Persons 26–50 who are Deputies or Employees of the Outagamie County Sheriff's Department,

          Defendants.

OPINION AND ORDER

24-cv-176-wmc

---

    Plaintiffs, Ronald G. Wolff and Karri E. Wolff, have filed a complaint under 42 U.S.C. § 1983 (Pls.' Compl. (dkt. #1)), alleging that defendants Josh Kaul, Dennis Carroll, and various agents and employees of the Wisconsin Department of Justice and Outagamie County Sheriff's Department, violated their constitutional rights while executing a search warrant. Defendants have moved for summary judgment on all of plaintiffs' claims, arguing that they are barred by claim preclusion because they were, or could have been, raised in a previous case, and because the claims fail on the merits. (Dkt. #20). For the reasons explained below, the court will grant summary judgment in favor of defendants.

1

## UNDISPUTED FACTS[1]

A. **The Search**

On March 22, 2022, defendant Agent Carroll and other law enforcement agents executed a search warrant at three properties in Outagamie County owned by Ronald and Karri Wolff. Before executing the searches, a special agent from Wisconsin Department of Justice Division of Criminal Investigation ("DCI") led a briefing for the benefit of the other agents on the search warrant, although Agent Carroll was not present at that briefing.

While executing the warrant, Agent Carroll and DCI Special Agent Jeffrey Wisch met with Ronald and Karri Wolff in a meeting room at one of the properties described in the warrant. At one point, Ms. Wolff attempted to leave the room against Agent Carroll's order to sit down. As Ms. Wolff was walking through an exit door, Agent Carroll grabbed the hood of her sweatshirt to prevent her from leaving as he simultaneously stated, "no." (Dkt. #41, ¶ 60). Although then complying, Ms. Wolff claims she told Agent Carroll that he hurt her neck.[2]

---

[1] Unless otherwise indicated, the facts set forth in this section are taken from the proposed findings of fact that are undisputed by the parties as required by the court's procedures on summary judgment. *See Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (the court considers only evidence set forth in a proposed finding of fact with proper citation); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018) (disregarding at summary judgment "submissions that make legal arguments and assert legal conclusions, which are not factual statements at all"). There is also video footage of the interaction between Karri Wolf and Agent Carroll.

[2] Ronald and Karri Wolff also represent that "[i]t was common knowledge in the community" that Karri Wolff had a port inserted in her neck in 2020 as part of cancer treatment, (dkt. #41, ¶ 23), but they offer no evidence that Agent Carroll knew of Ms. Wolff's medical treatment.

According to Agent Carroll, he grabbed Ms. Wolff's hood because he was concerned she would try to destroy evidence, obtain a weapon to hurt herself or others, or flee. Security camera footage also shows that after Carroll released her hood, Ms. Wolff calmly sat down and proceeded to answer the agents' questions. (Dkt. #23-7.)[3] The next day, Ms. Wolff called a hospital because she was worried about her throat. A nurse informed Ms. Wolff to come in if she developed problems breathing. Ultimately, she did not go to the hospital or seek other medical care because her throat improved.

In executing the warrant, DCI logged and temporarily retained property seized from the Wolffs, including documents, devices and electronic files. It is undisputed that DCI logged the chain of custody for each item of the Wolffs' seized property in its case management system ("ACISS"). However, the parties dispute whether all of the Wolffs' property was later returned. Defendants say that it returned all property seized except the following items: drug paraphernalia; *DCI-created* computer media and evidence files; and documents returned to the state circuit court after completion of Ronald Wolff's criminal prosecution. (Dkt. #38, ¶¶ 45–47) (citing Yerges Decl. (dkt. #24-2).) With these exceptions, defendants point to ACISS logs showing that all of the Wolffs' property, including all documents, had been returned as of July 1, 2024.

In contrast, Ronald and Karri Wolff say not all property has been returned and some returned property had been damaged. Specifically, the Wolffs represent that "copies"

---

[3] While the court views the facts in "the light depicted in the videotape," *Jones v. Anderson*, 116 F.4th 669, 677 (7th Cir. 2024), Ms. Wolff testified that the video showing the hoodie grabbing "doesn't look as bad as it looked in real life, I guess[,]" and that it "seemed worse than what it looks in the video." (Dkt. #38, ¶¶ 33–34).

of their property created by DCI were not returned, and that their cellphones and Mr. Wolff's HP Laptop were returned damaged. They also state the original "Willow Lane documents," along with documents related to Elsner Road and Mr. Wolff's election campaign, have not been returned.[4] (Dkt. #41, ¶¶ 98–100). In her deposition, however, Karri Wolff acknowledged that photocopies of the original Willow Lane documents were returned and that the Wolffs were otherwise able to obtain copies from the appropriate State of Wisconsin agency when the Wolffs needed original versions of the Willow Lane documents. (Karri Wolff Dep. (dkt. #28) 5–6).) Also, Ms. Wolff was not sure whether defendants took documents related to Elsner Road or Ronald Wolff's election (Karri Wolff Dep. (dkt. #28) 5–6), nor are those documents listed on the ACISS logs. (Yerges Decl. (dkt. #24-2).) To the extent they were included in the ACISS logs, all documents listed on the log have been returned. *Id*.

B. Prior Claims in *Wolff I*

On March 30, 2022, plaintiffs filed a complaint in *Wolff v. Virgil*, No. 22-CV-711-WMC ("*Wolff I*"). In *Wolff I*, Ronald and Karri Wolff brought claims under 42 U.S.C. § 1983 against the then DCI administrator, Tina Virgil, special agent Jay Yerges, and unknown agents and employees of the Wisconsin Department of Justice and Outagamie County Sheriff's Department (collectively, the "*Wolff I* Defendants"). Those claims arose out of same search warrant and searches again put at issue in this case. Specifically, in

---

[4] The Wolffs alleged in their Complaint that Ronald Wolff's tower computer was not returned, but they did not include this allegation in their proposed findings of fact. (Pl.'s Compl. (dkt. #1, ¶ 30)).

4

*Wolff I*, plaintiffs claimed that the defendants violated their Fourth Amendment rights in two ways: (i) the search warrant was overly broad and lacked particularity; and (ii) the search warrant was executed in an unreasonable manner. Plaintiffs also claimed the search warrant violated their due process rights under the Fifth and Fourteenth Amendments because they were not given notice or an opportunity to be heard before the search, a list of the items taken, or instructions and an opportunity to reclaim those items. Finally, the Wolffs asserted an excessive-force claim under the Fourth Amendment against an unnamed DCI agent for pulling the hood of Karri Wolff's sweatshirt.

Before final judgment, plaintiffs withdrew the latter claim against the unnamed agent, and that claim was dismissed *without* prejudice in a June 26, 2023, order.[5] Plaintiffs also withdrew their due process claims, "perhaps realizing that the claim was subsumed by their claims challenging the search and seizure." (*Wolff I* Order on Mot. in Lim. (dkt. # 23-3, at 2).) This left only the plaintiffs' claim that the search warrant violated the Fourth Amendment for lacking particularity and being unreasonable. In its *Wolff I* order, this court later granted summary judgment to the defendants on plaintiffs Fourth Amendment claims and dismissed plaintiffs' remaining claims against defendants Tina Virgil and Jay Yerges for her alleged refusal to return property seized during the search as barred by the doctrine of qualified immunity. Plaintiffs filed a notice of appeal from the final judgment entered in *Wolff I*, which remains pending before the Seventh Circuit.

---

[5] Shortly thereafter, plaintiffs learned the identity of that unnamed agent to be Agent Carroll, but never sought to reinstate their excessive-force claim.

## OPINION

In their current lawsuit ("*Wolff II*"), plaintiffs now assert four claims:

(1) defendants violated plaintiffs' Fifth and Fourteenth Amendment due process rights by unreasonably seizing their property and failing to return certain property;

(2) plaintiffs are entitled to just compensation for the taking of their unreasonably seized property under the Fifth Amendment;

(3) plaintiffs are entitled to equitable relief for their seized property and for damages under common law; and

(4) defendant Agent Carrol used excessive force against plaintiff Karri Wolff in violation of the Fourth Amendment.

As noted, defendants have moved for summary judgment on all four claims, contending that plaintiffs' claims fail both on the merits and claim preclusion, having been or could have been brought in *Wolff I*. The court addresses each of plaintiffs' property claims (claims 1, 2, and 3) and their excessive force claim (claim 4) below. Summary judgment is appropriate if the material facts are not genuinely disputed and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

I.   **Property Claims (Claims 1, 2, and 3)**

Plaintiffs' first three claims are based on three property rights: due process, unconstitutional taking, and equitable relief for return of property. For the following reasons, these claims are barred by claim preclusion and fail on the merits.

6

### A. Claim Preclusion

Because plaintiffs' property claims arose out of the same set of facts presented in *Wolff I* and could have been asserted in that case, those claims are barred by claim preclusion, which is a legal doctrine intended to foster predictability and eliminate redundant litigation by prohibiting claims that were, or could have been, brought in a previous action. *Bell v. Taylor*, 827 F.3d 699, 706, 708 (7th Cir. 2016). In particular, preclusion works as a bar to suit if a claim satisfies the following three elements: "(1) an identity of the causes of action; (2) an identity of the parties or their privies; and (3) a final judgment on the merits." *Id*. at 706 (citation modified) (quoting *Roboserve, Inc. v. Kato Kagaku Co., Ltd.*, 121 F.3d 1027, 1034 (7th Cir. 1997)).

As for the first element, an identity of the causes of action is satisfied if a party's current claims are "based on the same, or nearly the same, factual allegations[,]" of those in a previous suit. *Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011) (alteration in original); *see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020) (the two claims must involve a "common nucleus of operative facts"). To determine this, "courts should consider the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds," *Bernstein v. Bankert*, 733 F.3d 190, 227 (7th Cir. 2013) (cleaned up), but are "not limited to the words in the complaint;." *Daza v. State*, 2 F.4th 681, 684 (7th Cir. 2021).

Instead, the court examines "the complaint to discern the basis of the litigation," with "[a]nything falling within that common nucleus, whether or not actually raised, fall[ing] within the scope of the claim and … thus subject to claim preclusion in a later case." *Id*. In other words, a plaintiff cannot avoid claim preclusion by adding new legal theories for recovery in the second suit. *Averhart v. Sheriff of Cook County Illinois*, 752 F.3d 1104 (7th Cir. 2014) ("[A]ll legal theories that concern the same events [are] to be brought in a single suit."). Here, there is no dispute that plaintiffs' suit is based on the same set of facts as those in *Wolff I* because both suits arise out of the same searches. Additionally, plaintiffs cannot avoid claim preclusion by adding new due process, takings, and equitable relief theories to a second suit.

As for the second element of claim preclusion, an "identity of parties" is satisfied if the parties in both suits were in privity or had a legal relationship such that the nonparty in the original suit had its interests adequately represented by the original party. A party's representation of a nonparty is adequate if "(1) the interests of the nonparty and her representative are aligned . . . and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." *Taylor v. Sturgell*, 553 U.S. 880, 900 (2008); *see also Mandarino v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983) ("[a] government and its officers are in privity for purposes of res judicata."). Here, the plaintiffs are identical in both suits and the defendants named in plaintiffs' property claims in *Wolff II* are in privity with the *Wolff I* defendants. Indeed, all defendants are agents of the Wisconsin Department of Justice or the Outagamie County Sheriff's Department. More specifically, the named defendants in *Wolff I* included: Tina

Virgil, the DCI administrator working under the authority of now named defendant Josh Kaul as the Wisconsin Attorney General; and DCI special agent Jay Yerges, a colleague of now named defendant Dennis Carroll, a fellow agent who conducted the searches at issue along with Yerges.  The defendants in both suits have aligned interests in defeating plaintiffs' claims.

The third element -- a final judgment on the merits -- is satisfied if judgment in the original case is final when the claim is raised again.  Though a party may appeal a district court's final judgment, as here, "finality for purposes of appeal is not the same as finality for purposes of preclusion." *Bell*, 827 F.3d at 707.  Instead, finality for claim preclusion "turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Id.* (quotation omitted).  In *Wolff I*, plaintiffs received an adequate hearing and final judgment was entered by this court.  Therefore, although plaintiffs have appealed, this court's final judgment is just that for claim preclusion purposes, at least absent reversal by the Seventh Circuit.  *Id*.

### B. Merits

Even if plaintiff's property claims were not precluded, they still fail on the merits.

#### 1. Due Process Claims

"The Due Process Clause of the Fifth and Fourteenth Amendments prohibits deprivation of life, liberty, and property without due process of law." *Matamoros v. Grams*, 706 F.3d 783, 789 (7th Cir. 2013) (citing U.S. Const. amends. V, XIV).  To establish a

procedural due process violation of a property right, a plaintiff must show there is "(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process." *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010) (quoting *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004)).  Certainly, plaintiffs had a property interest in the property seized and were deprived of that property when seized. Thus, only the third element is at issue: whether plaintiffs were denied due process.

Essentially, plaintiffs claims that defendants seized their property without due process of law because "significant and important portions" of their property were seized in a "per-se unreasonable" manner, the "time delay in the return of other items was unreasonable[,]" and "some items have still not been returned," including documents relating to their Willow Lane property, their Elsner Road property, and Mr. Wolff's election. (Dkt. #1, ¶ 58).  In response, defendants contend that this due process claim fails on the record at summary judgment because DCI seized plaintiffs' property pursuant to a valid search warrant and such property was returned undamaged and in a timely manner.[6] The court agrees.

First, this court has already decided that plaintiffs received adequate pre-deprivation process and their property was seized in a reasonable manner.  This is because defendants acted under the authority of a valid search warrant.  "A seizure arising from a criminal investigation does not threaten due process where . . . the state requires a fair and reliable

---

[6] Defendants also argue that plaintiffs waived this due process claim, along with the other property claims, because plaintiffs failed to respond to the arguments against each claim included in defendants' opening brief. (Def.'s Reply (dkt. #39) 13) (citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). However, the court need not consider this argument because the claims fail on the merits and, as already discussed, are barred by claim preclusion.

determination of probable cause as a condition to the seizure." *Mahnke v. Garrigan*, 428 Fed. Appx. 630, 636 (7th Cir. 2011) (citing to *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 19 (1978); *Reams v. Irvin*, 561 F.3d 1258, 1264 (11th Cir. 2009)). A search warrant issued during a criminal investigation satisfies due process because it follows a judge's finding of probable cause. Plaintiffs had every reason to dispute in *Wolff I* this court's determination that defendants reasonably seized plaintiffs' property under a valid search warrant.

In addition, defendants have established plaintiffs had access to adequate post-deprivation process because state procedures for seeking the return of their property were available. Specifically, "a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." *Hudson v. City of Chicago*, 374 F.3d 554, 563 (7th Cir. 2004) (citing *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir.1982)). In Wisconsin, the following statute governs requests for seized property: "[a]ny person claiming the right to possession of property . . . seized pursuant to a search warrant . . . may apply for its return to the circuit court for the county in which the property was seized or where the search warrant was returned." Wis. Stat. § 968.20. Plaintiffs have failed to show that they even availed themselves of this state procedure for requesting unreturned property, much less that the process was unsuccessful. Therefore, plaintiffs' due process claims fail and defendants are entitled to summary judgment on those claims on the merits as well.

### 2. Takings Claim

The Fifth Amendment's Takings Clause prohibits "private property be[ing] taken for public use, without just compensation." U.S. Const. amend. V. Plaintiffs bring a takings claim under the Fifth Amendment based on defendants' "temporary and permanent taking of their property." (Pl.'s Compl. (dkt. # 1) ¶ 73).)

However, this claim fails for many of the same reasons plaintiffs' due process claims fail. First, there is again no factual dispute that defendants seized plaintiffs' property pursuant to a valid search warrant. The Seventh Circuit has explained that "the Takings Clause does not apply when property is retained or damaged as a result of the government's exercise of its authority pursuant to some power other than the power of eminent domain." *Johnson v. Manitowoc Cnty.*, 635 F.3d 331, 336 (7th Cir. 2011) (affirmed in *Hadley v. City of South Bend, Indiana*, 154 F.4th 549 (7th Cir. 2025)). Additionally, the Fifth Amendment does not require compensation for property damaged by law enforcement while executing a valid search warrant. *Hadley*, 154 F.4th at 556.

Further, plaintiffs have provided insufficient evidence for a reasonable jury to find that defendants have permanently taken their property. According to defendants, plaintiffs' property was logged into a computer system and later returned. Although plaintiffs allege that they are still missing some copies of certain documents, they have no evidence besides their own, speculative statements that defendants ever confiscated some of those documents and concede others were returned. In particular, plaintiffs specifically list the following property as unreturned: original Willow Lane documents, the Elsner Road documents, and documents relating to Mr. Wolff's election. (Dkt. #41, ¶¶ 98–100).

However, Ms. Wolff testified under oath that copies of the original Willow Lane documents *were* returned and that the Wolffs were otherwise able to obtain copies from the State of Wisconsin when they needed original versions. (Karri Wolff Dep. (dkt. #28) 5–6).) Regarding the Elsner Road and Ronald Wolff election documents, Ms. Wolff was unsure whether defendants ever seized those documents. (Karri Wolff Dep. (dkt. #28) 5–6).) Finally, even if these documents had been seized by defendants, it is *undisputed for purposes of summary judgment* that the ACISS log tracked the chain of custody for all seized items, (dkt. #38, ¶53), *and* that log shows all documents were returned. (Yerges Decl. (dkt. #24-2).) Without some unequivocal evidence by either plaintiff that this is incorrect, a reasonable jury would not find otherwise, and defendants are entitled to summary judgment on plaintiffs' takings claim as wll.

### 3. Common Law Return of Property

Finally, plaintiffs also bring a claim for return of property, requesting that the court exercise its equitable power to order the return of seized property, citing *Mr. Lucky Messenger Service Inc. v. United States*, 587 F.2d 15 (7th Cir. 1978). In *Mr. Lucky*, the plaintiff brought a claim for the return of $65,000 of money seized by the government and held for over 17 months without any charges ever brought against plaintiff. *Id.*, 587 F.2d at 16. In finding the government likely violated the plaintiff's rights, the Seventh Circuit explained in *Mr. Lucky* that district courts have general equitable jurisdiction over the return of illegally seized property. *Id.* at 16–17. Specifically, courts may exercise such jurisdiction where the government withholds seized property in a manner that involves a "callous disregard for

13

constitutional rights." *Id.* at 17 (quoting *Hunsucker v. Phinney*, 497 F.2d 29, 32 (5th Cir. 1974)).

However, the undisputed facts here do not support a claim for return of property under *Mr. Lucky*. As already discussed, this court found in *Wolff I* that the seizure of plaintiffs' property was reasonable and plaintiffs have failed to present adequate evidence for a reasonable jury to find that defendants retained any of their property. Thus, defendants are entitled to summary judgment on this claim well.

## II.     Excessive Force Claim (Claim 4)

As for plaintiffs remaining claim that Agent Carroll used excessive force against Karri Wolff in violation of the Fourth Amendment when he pulled back the hood of her sweatshirt during the search, plaintiffs allege that Agent Carroll's use of force was unreasonable because defendants were on notice that: "Karri Wolff was suffering from cancer"; and "there was objectively no reason to use any force at all," since and Karri Wolff was not under arrest or resisting arrest or attempting to evade arrest by flight"; and "pulling the hood of a hooded sweatshirt cannot possibly be an acceptable tactic for an officer to employ." (Pl.'s Compl. (dkt. #1, ¶¶ 69–70).) At summary judgment, defendants argue this claim fails on the merits because the undisputed evidence shows that Carroll did *not* use excessive force and the claim is barred by qualified immunity.[7] Both arguments have merit.

---

[7] Defendants also argue plaintiffs' excessive force claim is barred by claim preclusion because plaintiffs could have brought the same claim in *Wolff I*. While plaintiffs did bring an excessive force claim, it was later dismissed without prejudice. The court need not resolve whether this dismissal

14

For an excessive force claim under the Fourth Amendment to prevail a plaintiff must prove that the officer used "greater force than was reasonably necessary." *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016); *Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009). This determination is made from the perspective of a "reasonable officer" in light of the totality of the circumstances known to the officer, without regard to his or her actual intent or subjective beliefs. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 472–73 (7th Cir. 2015); *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). Moreover, to assess reasonableness, courts consider the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. As a result, "whether a particular use of force was objectively reasonable 'is a legal determination rather than a pure question of fact for the jury to decide.'" *Dockery v. Blackburn*, 911 F.3d 458, 464 (7th Cir. 2018) (quoting *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 520 (7th Cir. 2012)).

On the evidence provided by the parties at summary judgment, the court finds that Agent Carroll used reasonable force in light of all the circumstances known to him at the time, including the risk that Karri Wolff might be leaving the room to destroy evidence. First, plaintiff's description of defendant Agent Carroll's use of force is largely discredited

---

without prejudice, and plaintiffs' later failure to reinstate the claim after learning the identity of the officer involved in *Wolff I*, should result in claim preclusion, because the claim so clearly fails on the merits for the reasons addressed above.

by the video record.[8]  Instead, the video shows Agent Carroll briefly grabbing the hood of Ms. Wolff's sweatshirt and Ms. Wolff stopping any forward movement as soon as she felt her sweatshirt being held.  Noticeably absent is any evidence of the agent "pulling" her backward as Ms. Wolff contends.  Rather, she stops, steps back, and then calmly sat down without any apparent discomfort.  Moreover, while not ideal, an objective officer may have reasonably concluded that lightly grabbing Ms. Wolff's hood was necessary to prevent her destroying evidence and because the DCI agents were still questioning her.  Regardless, plaintiffs provided no admissible evidence suggesting that Agent Carroll knew about Ms. Wolff's cancer diagnosis, much less was aware of any unique sensitivity in her neck area.  Therefore, Agent Carroll did not use excessive force against Karri Wolff by gently grabbing the hood of her sweatshirt.

Regardless, plaintiffs' excessive force claim is barred by the doctrince of qualified immunity.  For plaintiffs to overcome defendants' assertion of qualified immunity, they must show that the defendant violated their "clearly established" constitutional right. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017).  And although qualified immunity is an affirmative defense, plaintiffs bear the burden of defeating it. *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018).  Controlling case law clearly establishes a claim for excessive force if: (1) there is a "closely analogous case" holding that the specific type of force used by the defendants is excessive; or (2) "a general constitutional rule already identified in the

---

[8] Video evidence can sometimes "evaporate any factual dispute that would otherwise exist," *United States v. Norville*, 43 F.4th 680, 682 (7th Cir. 2022). It may do so when the video is so definitive that there could be no reasonable disagreement about what the video depicts. *Kailin v. Vill. Of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023) (citing *Scott*, 550 U.S. at 380)

16

decisional law applies with obvious clarity to the specific conduct in question." *Cibulka v. City of Madison*, 992 F.3d 633, 639–40 (7th Cir. 2021) (internal quotation marks and alterations omitted).

Plaintiffs have offered neither. Indeed, plaintiffs do not even attempt to cite a closely analogous case establishing the type of force Agent Carroll used was excessive. Instead, plaintiffs rely on the second option by arguing that a reasonable officer would understand this type of force violates the Fourth Amendment. (*see* Pl.'s Resp. (dkt. # 36) 15).) In contrast, for the same reasons just discussed, this court finds Agent Carrol's use of force is at least arguably an objectively reasonable instinct given the totality of the circumstances, however ill-advised. Therefore, plaintiffs have not overcome defendants' qualified immunity defense, barring her claim for excessive force.

ORDER

IT IS ORDERED that defendants' motion for summary judgment (dkt. #20) is GRANTED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 4th day of December, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge